RENDERED: MAY 7, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0243-MR

BRANDON HARRIS                                                            APPELLANT

APPEAL FROM CHRISTIAN CIRCUIT COURT
v.       HONORABLE JOHN L. ATKINS, JUDGE
ACTION NO. 18-CR-00324

COMMONWEALTH OF KENTUCKY                                  APPELLEE

AND
NO. 2020-CA-0244-MR

BRANDON HARRIS                                                            APPELLANT

APPEAL FROM CHRISTIAN CIRCUIT COURT
v.       HONORABLE JOHN L. ATKINS, JUDGE
ACTION NO. 19-CR-00278

COMMONWEALTH OF KENTUCKY                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND L. THOMPSON, JUDGES.

CALDWELL, JUDGE:  Brandon Harris appeals his conviction for trafficking in a controlled substance in the first degree and being a persistent felony offender in the first degree and his sentence of fifteen years' imprisonment.  Having reviewed the arguments forwarded and the record below, we affirm.

## FACTS

On April 22, 2018, Hopkinsville Police arrested Appellant Brandon Harris on an outstanding warrant.  During a search of his person as a result of the arrest, multiple baggies containing a white substance were found.  The substance was determined to be cocaine.  He was charged with trafficking in a controlled substance in the first degree and being a persistent felony offender in the first degree.

At the trial, Harris presented a defense of possessing the cocaine with no intention of trafficking.  He claimed that he had been at a family picnic and had begun drinking, which led him to doing cocaine with an old friend in the bathroom. He later asked that old friend for more cocaine, and the friend gave him seven baggies.

The party continued at a local club, where Harris claimed he purchased another baggie of cocaine from a different acquaintance.  He was outside the club attempting to return this cocaine to the acquaintance, having found it to be of low quality, when the police arrived at the club.  When he was asked by

the officer if he had any contraband on his person, he claimed he answered affirmatively and turned over all eight baggies. The arresting officer denied that Harris was forthcoming with the cocaine and stated that he found it on Harris' person when he conducted a search upon arrest.

The jury was instructed on trafficking and possession of a controlled substance as a lesser-included offense of trafficking. During deliberations, the jury requested clarification of the term of "transfer," which was included in the instructional definition for "traffic." The jury ultimately found Harris guilty of trafficking. In a bifurcated proceeding, he was likewise found guilty of being a persistent felony offender in the first degree. He was ultimately sentenced to a total term of imprisonment of fifteen years. He appeals as a matter of right.

## STANDARD OF REVIEW

None of the allegations of error presented in this appeal was preserved by contemporaneous objection at trial, despite Harris' characterizations to the contrary. Harris requested this Court review these instances of alleged error for manifest injustice pursuant to RCr[1] 10.26 should we find any of the allegations not properly preserved for review, and we will do so.

> Under this rule, an error is reversible only if a manifest injustice has resulted from the error. That means that if, upon consideration of the whole case, a substantial

---

[1] Kentucky Rules of Criminal Procedure.

possibility does not exist that the result would have been different, the error will be deemed nonprejudicial.

*Graves v. Commonwealth*, 17 S.W.3d 858, 864 (Ky. 2000) (citing *Jackson v. Commonwealth*, 717 S.W.2d 511 (Ky. App. 1986)).

## **ANALYSIS**

*I.        Instructional Issue*

Harris first complains that the trial court erred when it defined "transfer" incorrectly in the jury instructions and alleges that the instructions led the jury to be confused and convict Harris in error.  Harris' counsel only brought up any concerns about the instructions *after* the jury had found his client guilty.  RCr 9.22 requires *contemporaneous* objections to jury instructions, and an objection lodged only after verdict is meaningless.  Harris characterizes this issue as "partially preserved," but we disagree and find that an objection lodged to an instruction only after verdict is of no consequence.  Harris requested palpable error review should this Court not find the issue preserved and, thus, we will review for manifest injustice pursuant to RCr 10.26.

The jury was instructed on trafficking as follows:

> You will find the Defendant guilty of First-Degree Trafficking in a Controlled Substance under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about April 22, 2018 and before the finding of the Indictment herein, he had in his possession a quantity of cocaine; AND

B. That he knew the substance so possessed by him was cocaine; AND

C. That he possessed a quantity of four (4) grams or more of cocaine, with the intent to sell, transfer or distribute cocaine.

Elsewhere in the instructions of the court, the following relevant terms were defined as follows:

**TRAFFIC** – Means to manufacture, distribute, dispense, sell, transfer, or possess with intent to distribute, dispense, sell or transfer a controlled substance.

**TRANSFER** – Means to give a controlled substance to another person without payment or consideration or to receive a controlled substance from another person.

Harris alleges that the definition of transfer was in error as it led the jury to believe that a "transfer" occurs when a person is the recipient of a controlled substance, as opposed to only when a person passes a controlled substance to another. Further, Harris alleges that the instruction was in error when it instructed the jury that it could find him guilty of trafficking by possessing the cocaine with the intent to transfer it, arguing that the statute does not allow for such theory of trafficking.

While we may agree with Harris that the jury instructions were not artfully crafted, we cannot find that any resultant error was palpable. It is correct

that "possession with intent to transfer" is not a viable theory of guilt and should not have been a theory presented to the jury for a finding of guilt. *Commonwealth v. Rodefer*, 189 S.W.3d 550 (Ky. 2006). However, there was sufficient evidence of guilt under alternative theories of guilt provided such as to prevent the conclusion that but for the error Harris would not have been convicted. Harris was found to be in possession of eight separate baggies containing cocaine, and a reasonable juror could have concluded that such was consistent with intent to sell or distribute all or some of the cocaine. *See Chestnut v. Commonwealth*, 250 S.W.3d 288, 305 (Ky. 2008) (holding that an instructional error does not result in an unfair trial if the jury as instructed could properly find guilt under either another section of the instruction or another theory of guilt). Tellingly, Harris does not raise an issue concerning sufficiency of evidence. Further, it was Harris' counsel who elicited the evidence from the testifying officer that, based upon the aggregate weight and the packaging of the cocaine in separate baggies, he charged Harris with trafficking rather than mere possession. *See Robinson v. Commonwealth*, 181 S.W.3d 30, 36 (Ky. 2005) (holding evidence of multiple bindles of drugs can support finding of guilt on charge of trafficking).

The jury instructions would have been more effective and without error, even error less than palpable, had they read as follows:

You will find the Defendant guilty of First-Degree Trafficking in a Controlled Substance under this

Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about April 22, 2018, and before the finding of the Indictment herein, he had in his possession a quantity of four (4) grams or more of cocaine;

AND

B. That he knew the substance so possessed by him was cocaine;

AND

C. That he had the cocaine in his possession with the intent of selling, distributing or dispensing it to another person(s).

1 WILLIAM COOPER & DONALD P. CETRULO, KENTUCKY JURY INSTRUCTIONS § 9.11B (2020).

As to the definition of "transfer" given the jury, we agree with Harris that it incorrectly included "receive" as a method of transfer. Rather, a proper definition of "transfer" should not have included being in receipt as a method of transferring controlled substances. "Transfer—means to dispose of a controlled substance to another person without consideration and not in furtherance of commercial distribution." 1 WILLIAM COOPER & DONALD P. CETRULO, KENTUCKY JURY INSTRUCTIONS § 9.08 (2020).

The jury was instructed, though unartfully, on trafficking and on simple possession. They had to agree, unanimously, to find guilt under one

-7-

instruction or another. We do not find that the erroneous trafficking instruction or the incorrect definition of "transfer" amounted to palpable error, as the Commonwealth's sole theory was not the incorrect theory present in the instruction. Rather, it was the Commonwealth's theory that the packaging and amount were not consistent with personal use possession. If the jury had not been persuaded, they could have acquitted Harris of trafficking and found him guilty under the possession instruction.

We agree with Harris that the instructions were incorrect and unartful, but without a contemporaneous objection, we cannot find that the incorrect instructions were the only reason for his conviction. Again, not even Harris suggests that there was not sufficient evidence of guilt to support a finding of guilt on another theory present in the instructions (possession with intent to distribute, dispense, sell, or transfer). There was no palpable error.

## II. *Cross-Examination and Closing Argument*

Harris raises multiple complaints about the prosecution's cross-examination of him and the closing argument but acknowledges that no objections were lodged to any of the instances he now presents to this Court. Harris requests palpable error review pursuant to RCr 10.26.

First, Harris alleges that the prosecutor improperly cross-examined him by characterizing him as a "storyteller" and intimating that he was a longtime

-8-

drug trafficker. While the prosecutor may have been an aggressive examiner, without a contemporaneous objection, we cannot say that palpable error occurred. To so find would be to find that but for the cross-examination, no reasonable juror would have found Harris guilty of trafficking. Because we have found, *supra*, that reasonable jurors could have found Harris guilty following the close of the Commonwealth's evidence, it cannot be that the only reason that the jury convicted Harris was due to this tough cross-examination. In *Davis v. Commonwealth*, the Supreme Court observed that simply labeling as "prosecutorial misconduct" issues which were not preserved for appeal is not a successful strategy. 967 S.W.2d 574 (Ky. 1998). Further, even when properly objected to, vigorous arguments of counsel alone do not require reversal.

> Counsel is allowed "broad latitude" in presenting a case to a jury. So mere improper remarks, standing alone, are not sufficient for reversal. Rather, a reviewing court must determine whether the complained-of prosecutorial misconduct "was of such an 'egregious' nature as to deny the accused his constitutional right of due process of law." Our review focuses on whether the trial as a whole was fair, not solely upon the culpability of the prosecutor. Reversal is proper only if the prosecutorial misconduct "is so serious as to render the trial fundamentally unfair."

*Parker v. Commonwealth*, 291 S.W.3d 647, 658-59 (Ky. 2009) (citations omitted).

Harris also complains that during the officer's rebuttal testimony, following the contentious cross-examination, palpable error occurred when the prosecution asked the officer whether he had reviewed body camera footage of the

arrest as Harris had insisted during his testimony he had told one of the arresting officers that the cocaine was possessed by him only for his personal use. Harris complains that the prosecutor wrongfully referred to that testimony concerning the body camera footage obtained from other officers present at the arrest to argue that Harris did not tell any officer the cocaine was for his personal use. He characterizes this as arguing facts not in evidence as the other officers did not testify at the trial. Again, no objection was made.

We cannot find that had these questions not been asked of the officer that the outcome would have been different. Even if Harris would have told an officer on the scene that he possessed the cocaine for his personal use, such would not have precluded a trafficking charge or a determination of guilt on such charge. No palpable error occurred. *See Padgett v. Commonwealth*, 312 S.W.3d 336, 350 (Ky. 2010) (holding that a closing argument must be considered as a whole and considering the quantum of evidence of guilt).

Harris also alleges that during the cross-examination of him by the prosecution, the prosecutor improperly introduced KRE 404(b) evidence, asking Harris about past drug trafficking. There was no objection to a question about whether Harris had ever sold drugs, and Harris answered that he had previously sold controlled substances. The answer was, of course, prejudicial, but there was sufficient other evidence of guilt on the present charge that we cannot say that but

-10-

for this line of questioning Harris would not have been convicted.  The fact that the prosecutor mentioned Harris' answer to the question during his closing does not change the analysis.  *See Cook v. Bordenkircher*, 602 F.2d 117, 121 (6th Cir. 1979) (holding overwhelming evidence of guilt and a failure to object, coupled with the wide latitude allowed in closing, precludes a finding of manifest injustice).

There was no palpable error in the cross-examination or the closing argument of the prosecution.

*III.     Batson Issue*

When the prosecution employs a peremptory strike against a venireperson, the defense can object if it believes that the strike was motivated by a discriminatory reason.

> Under *Batson*, claims of racial discrimination in the use of peremptory strikes are analyzed under a three-step test. "First, the defendant must show a prima facie case of racial discrimination.  If the trial court is satisfied with the defendant's showing, the burden shifts to the prosecutor to state race-neutral reasons for the peremptory strikes.  The trial court must then determine whether the defendant has sufficiently proven purposeful discrimination." *Thomas v. Commonwealth*, 153 S.W.3d 772, 777 (Ky. 2004) (citing *Batson* [*v. Kentucky*, 476 U.S. 79, 93-98, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986)]).

*Mash v. Commonwealth*, 376 S.W.3d 548, 555 (Ky. 2012).

Despite Harris' contention that because the Commonwealth, unbidden, placed on the record its unbiased reason for exercising peremptory

strikes, the issue was "preserved," we disagree. The fact that the prosecution placed its race-neutral reasons for exercising strikes without first waiting for the defense to object to the strikes does not equate to preservation. The issue was not preserved for review, and we do not disagree with the trial court's determination that the stated reasons were sufficiently race neutral. It is not enough for preservation to simply invoke "*Batson*," but the party challenging the strike must challenge the stated race-neutral reasons proffered.

> Once the Commonwealth gave its reasoning and such was acceptable to the trial court, the burden shifted to the Appellant to rebut the neutrality of the reasoning. The Appellant objected to the strike as not based on nondiscriminatory grounds, but failed to offer any further argument or evidence of purposeful discrimination.
>
> "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral." *Hernandez v. New York*, 500 U.S. 352, 360, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991). We are, thus, not persuaded that the Appellant met his *subsequent burden* to provide further evidence on which the trial court could determine the Commonwealth's peremptory strike to be discriminatory. Because the trial court is the best "judge" of the Commonwealth's motives in exercising its peremptory strikes, great deference is given to the court's ruling. *See Wells v. Commonwealth*, 892 S.W.2d 299, 303 (Ky. 1995) (the trial court is in the "best position" to determine the true intent behind the Commonwealth's peremptory challenges); *Snodgrass*, 831 S.W.2d at 179 (the trial court may "accept at face value" the explanation given by the prosecutor for his strikes, depending on his "demeanor and credibility["]). The trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the

sort accorded great deference," *Wells*, 892 S.W.2d at 303, and must be accepted unless they are clearly erroneous. *Stanford v. Commonwealth*, 793 S.W.2d 112, 114 (Ky. 1990). The trial court's determination in this case deserves no less deference and we find no reason to disturb its ruling.

*Gray v. Commonwealth*, 203 S.W.3d 679, 690-91 (Ky. 2006), *as corrected* (Oct. 31, 2006) (citation omitted).

The defense had a duty to not only initiate a *Batson* analysis by objecting to the peremptory strikes utilized by the prosecution, but also had the responsibility of challenging the reasons offered by the prosecution following its objection. Without challenging the reasons offered for the strikes, the matter is simply unpreserved for review.

At the third step of *Batson*, the burden shifts back to the defendant to show "purposeful discrimination." *Hernandez* [*v. New York*, 500 U.S. 352, 359, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991)]. At this step, the trial court was required to determine whether the prosecutor's race-neutral reason was actually a pretext for racial discrimination. "Because the trial court's decision on this point requires it to assess the credibility and demeanor of the attorneys before it, the trial court's ultimate decision on a *Batson* challenge is like a finding of fact that must be given great deference by an appellate court." *Commonwealth v. Coker*, 241 S.W.3d 305, 308 (Ky. 2007).

*Mash*, 376 S.W.3d at 555-56.

We must affirm, in light of the failure to preserve the error, unless we discern palpable error in the trial court's ruling accepting the prosecution's stated

reason for exercise of the strikes. There were three Black venirepersons struck by the prosecution. The first prospective juror indicated she did not believe that the intent of another person could ever be proven. Such reason for a strike is clearly race-neutral. The second venireperson had previously served on a jury which returned a not guilty verdict in a murder case. Such is a race-neutral reason. *McGinnis v. Commonwealth*, 875 S.W.2d 518 (Ky. 1994), *overruled on other grounds by Elliott v. Commonwealth*, 976 S.W.2d 416 (Ky. 1998). The last had served on a jury and returned a not guilty verdict in an animal cruelty case and had responded that he was acquainted with people involved in the drug trade. Again, these are race-neutral reasons for the strike.

Harris complains that the prosecutor was not made to identify the cases on which these prospective jurors had served and returned not guilty verdicts. However, it was up to Harris to object to the reasons, and he did not. He cannot complain now when he remained silent then. The trial court's responsibility is to evaluate the reasons stated for intent.

> A prosecutor may utilize his own personal knowledge concerning a juror and information supplied from outside sources. Whether the information is true or false is not the test. The test is whether the prosecutor has a good-faith belief in the information and whether he can articulate the reason to the trial court in a race-neutral manner which is not inviolate of the defendant's constitutional rights. The trial court, as the final arbiter, then decides whether the prosecutor has acted with a forbidden intent.

*Commonwealth v. Snodgrass*, 831 S.W.2d 176, 179 (Ky. 1992).

We find that the trial court's ruling that the reasons given by the prosecution for the peremptory strikes of jurors were nondiscriminatory and do not find any error, much less a palpable one, occurred.

## **CONCLUSION**

For the foregoing reasons, we affirm Harris' convictions and resultant sentence.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jennifer Wade
Molly Mattingly
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Aspen Roberts
Assistant Attorney General
Frankfort, Kentucky